28

JAMES TERINO et al., Appellants, *v.* OWEN LeCLAIR et al.,
Respondents. (Action No. 1.)

DOROTHY TERINO, now DOROTHY T. RAYMONDA, Appellant, *v.*
OWEN LeCLAIR, Respondent. (Action No. 2.)

Fourth Department, May 19, 1966.

*Fred J. O'Donnell* for appellants.

*Francis T. Longe* for Owen LeClair and another, respondents.

*Joseph A. Santry* for Producers Cooperative, Inc., respondent.

DEL VECCHIO, J. These appeals arise out of two actions which were tried together. In the first action (Action No. 1) plaintiffs James Terino and Dorothy J. Terino (Raymonda) sought judgment against defendants Owen LeClair, Florence LeClair and Producers Cooperative, Inc. as the result of a lease, including a partial assignment of milk proceeds coming due to the LeClairs from Producers, allegedly executed by the LeClairs. In the second action (Action No. 2) Dorothy J. Terino (Raymonda) sought judgment against Owen LeClair for conversion of property allegedly left on the leased premises at the time of the LeClairs' occupancy but subsequently taken away by LeClair. In this action defendant asserted a counterclaim for overpayment of rent under the lease with the Terinos.

Before the jury retired, the court withdrew Action No. 1 from its consideration on the ground that only questions of law were presented. After the jury had returned a verdict in Action No. 2 of no cause for action on the conversion action and on the counterclaim, the court rendered a decision in favor of all defendants in Action No. 1. Plaintiffs have appealed from the judgments against them in both actions.

The only factual dispute which appeared in the evidence arose in Action No. 2, concerning what property was on the leased premises at the time of letting and the propriety of its removal by the LeClairs. These issues were resolved by the jury in favor of the defendants. Its verdict was supported by the evidence and was not affected by any substantial error which requires its reversal.

Proof offered by defendant Owen LeClair did not warrant submission of his counterclaim to the jury. This counterclaim was predicated upon a liability of the plaintiffs landlords to defendants tenants for hay left on the leased premises at the time the property was vacated by the tenants. However, the record is devoid of any evidence of the happening of the condition which was a necessary precedent to liability of the landlords for purchase of the hay (viz.— the tenants' financial

inability to pay the rent). Without such proof defendant could not succeed on the counterclaim.

Since, however, the jury returned a verdict favorable to plaintiff Dorothy J. Terino (Raymonda) on this phase of the litigation, and there is no showing that the submission of the counterclaim was prejudicial to that plaintiff, the verdict will not be disturbed. Accordingly, the judgment in Action No. 2 is affirmed.

Coming then to Action No. 1: we are satisfied that the judgment in this case must be reversed and judgment rendered in favor of plaintiffs against all defendants.

The lease, which is the basis for this action, was executed on October 25, 1960 and provided that the LeClairs would occupy a farm owned by the Terinos for a period of 31 months, commencing November 1, 1960, at a monthly rental of $200. As to the method of payment, the lease provided: " the sum of $1,000.00 to be paid in cash within 30 days of the execution of this Agreement; no further payments to be made during the months of November and December 1960, or January of 1961, although an assignment of milk checks will become operative during the month of January, 1961, and payable to the parties of the first part in February in the amount of $100.00 per month for the months of January, February, March and April; commencing with the May, 1961 milk, the deductions shall be at the rate of $200.00 per month, and shall continue during the remainder of this lease. It is understood and agreed that the aforesaid assignment shall be subject only to the now existing assignment to Ruth Taylor in the amount of $1800.00 per year."

Subsequent to execution of the lease the LeClairs went into possession and on November 1, 1960, the day their tenancy began, Owen LeClair became a member of defendant Producers Cooperative, Inc. (hereinafter called " Producers "), making the co-operative his exclusive milk marketing agent. He began delivering milk to Producers that day and continued until the LeClairs vacated plaintiffs' farm in late September, 1961.

It was Producers' practice to pay for milk on the 10th and the 25th days of the month following delivery. Producers was also in the habit of honoring partial assignments of milk proceeds when executed by the farmer on forms designated " milk orders " provided by Producers.

On February 23, 1961 Producers received a telegram from plaintiffs' attorney advising the co-operative that plaintiffs had an assignment of $100 per month of LeClair's milk check, demanding that the money be paid over to plaintiffs or that the milk checks be held until court determination of plaintiffs'

claim, and stating that an action would follow immediately. Sometime prior to receipt of this telegram, plaintiff Mrs. Terino visited the office of Producers and exhibited the lease agreement containing the assignment. She was then advised by Producers' office manager that a "milk order" would have to be signed by LeClair before any money would be paid over to plaintiffs. Producers' president testified that, also prior to the date of the telegram, plaintiffs' attorney had informed him of the assignment in the lease, but the witness had stated that the co-operative had received no assignment and therefore would not withdraw any of the LeClair funds. Action No. 1 was subsequently commenced by service of the summons and complaint, accompanied by a copy of the lease, on Producers on March 14, 1961.

It was undisputed that in each month from February through October 1961 Producers paid out to LeClair, and to assignees on milk orders received by it after it had notice of the assignment to plaintiffs, sums which exceeded the amounts directed to be paid monthly to plaintiffs; no payments were made by it to plaintiffs.

So far as appears on the record, from October, 1960 to February, 1961 neither plaintiffs nor defendants LeClair ever took any steps toward the execution of any further instrument of assignment by the LeClairs. Neither did the LeClairs make any payment to plaintiffs for rent installments due under the terms of the lease beginning in February, 1961. In fact, they have never made any rent payment, other than the $1,000 down payment delivered about the time the lease was executed, although Owen LeClair testified that they occupied the premises and were responsible for 11 months' rent.

Upon this evidence we are satisfied that plaintiffs were entitled to a judgment in their favor in Action No. 1. By the terms of the lease agreement the LeClairs made a present assignment to plaintiffs of a portion of the milk proceeds which would come due to them. As only a partial assignment, the instrument, although not a legal assignment, nevertheless created an equitable right which could be enforced by the assignee. (*Coastal Commercial Corp.* v. *Kosoff & Sons,* 10 A D 2d 372.) That the assignment was not on a form prescribed by the debtor (Producers) did not affect its validity; the consent of the debtor to an equitable assignment is not required. (*Hinkle Iron Co.* v. *Kohn,* 229 N. Y. 179.) Nor was it significant that the debt which was partially assigned was to be created and the payment was to become due in the future. (*Field* v. *City of New York,* 6 N. Y. 179.) "The test of an equitable assignment is

the inquiry whether or not an assignment makes an appropriation of the fund so that the debtor would be justified in paying the debt or the assigned part to the person claiming to be the assignee.'' (*Hinkle Iron Co.* v. *Kohn, supra,* p. 183.)

The terms of the lease were specific in describing the subject of the assignment, the amounts to be paid to the assignee and the times of payment. In a subsequent provision it referred to the '' aforesaid assignment ''. Under this instrument Producers would have been justified in making the designated payments to plaintiffs. The conduct of both plaintiffs and defendants LeClair after execution of the lease gives further indication that both considered it as a perfected assignment by which defendants' rental payments would be made out of the milk proceeds coming due to LeClair. No other payment was proffered by defendants, although they occupied plaintiffs' premises and conceded their responsibility for rent. Evidently no thought was given by either plaintiffs or defendants to any other assignment instrument until Producers, the debtor, insisted on such a document on a form which it had prepared, which LeClair, who had apparently fallen out with plaintiffs, refused to sign.

In view of the uncontroverted proof of notice and demand, plaintiffs are entitled to a judgment against Producers for $1,200, representing the monthly payments which should have been paid to plaintiffs after notice of the assignment, but which were improperly paid to the LeClairs or their subsequent assignees. (*Continental Purchasing Co.* v. *Van Raalte Co.,* 251 App. Div. 151, 152.)

Plaintiffs are also entitled to a judgment against the LeClairs. for the sum of $1,200, representing the total amount of rent due and unpaid and the amount wrongfully received and converted by them in violation of the assignment. (*Hinkle Iron Co.* v. *Kohn, supra,* pp. 183-184.)

In Action No. 1 judgments should be entered in favor of plaintiffs against all defendants in the sum of $1,200.

BASTOW, J. P., GOLDMAN, HENRY and MARSH, JJ., concur.

Judgments (in Action No. 1) unanimously reversed on the law with costs and judgments directed to be entered in favor of plaintiffs for $1,200.

Judgment and order (in Action No. 2) unanimously affirmed, without costs of this appeal to either party.